IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 JUN -8 AM 10: 59
U.S. DISTRICT COURT
N.D. OF ALABAMA

HARMON JAMES WINBORN, JR.     )
                              )
    Plaintiff,                )
                              )
v.                            )    CV-97-AR-3200-S
                              )
ALABAMA DEPARTMENT OF         )
CORRECTIONS, et al.,          )
                              )
    Defendants.               )

ENTERED
JUN 0 8 1999

## MEMORANDUM OPINION

Presently before the court is defendants' motion for summary judgment. For the reasons set forth below, the court finds that said motion is due to be partially granted.

Plaintiff, Harmon James Winborn, Jr. ("Winborn"), is proceeding *pro se*. Recognizing that Winborn is not an attorney, the court entered an unusually detailed order when setting a briefing schedule for the current motion. In that order, the court explained the nature and purpose of a motion under Rule 56, F.R.Civ.P., and further explained the burdens placed upon both movant and non-movant. Without crossing any line beyond which the court's instruction would constitute advocacy, the court had wished to require Winborn to proceed properly before this court, as best a non-lawyer can. In the present case, despite the court's efforts, Winborn presents a confused and

confusing case. Even he is not certain of the claims he has or has not made. His pleadings reflect this fact, and defendants have responded with the confusion which might be expected. For this reason the court finds it appropriate to briefly outline Winborn's entire case in order to sort out the mess.

### Posture of the Case

Winborn was employed by defendant Alabama Department of Corrections. He first received notification of a suspension from work in January, 1997. Shortly thereafter, on January 31, 1997, he filed his first EEOC[1] charge, alleging that the suspension was motivated by age discrimination. Six months later, Winborn filed his second EEOC charge, alleging that he had suffered retaliation for having filed his earlier EEOC charge. On consecutive days - September 10 and 11, 1997, Winborn received notice of his right to sue regarding both charges.

On December 8, 1997, Winborn filed an application with Judge Propst of this court, seeking appointment of an attorney and leave to proceed without a filing fee. On December 12, 1997, Judge Propst entered an order which stated that Winborn's

---

[1] Equal Employment Opportunity Commission.

application would be "treated as a complaint... and deemed filed on the date of application." While denying Winborn's request to proceed without paying the filing fee, Judge Propst granted Winborn's request to appoint an attorney, referring the actual selection to Magistrate Judge Greene. Judge Greene appointed Birmingham attorney Jeff Bennitt on January 6, 1998. Bennitt performed an analysis under Rule 11, F.R.Civ.P., certified that the case was not frivolous, and requested leave to withdraw as Winborn's counsel. Judge Greene allowed Bennitt to withdraw on March 9, 1998. Since that time, Winborn has proceeded *pro se*. The case was thereafter assigned to the present judge.

Winborn's first "amended" complaint (actually the first "formal" complaint, because the December 8, 1997 filing was deemed the first complaint), named three defendants: the Alabama Department of Corrections, the State of Alabama, and East Thomas Work Release (collectively the "State of Alabama"). The first and third named defendants are agencies of the State of Alabama, so that the amended complaint effectively named only the State of Alabama as a defendant. Winborn alleged that he had suffered discrimination on the basis of age and/or race,[2] and he stated

---

[2] The amended complaint reflects Winborn's own uncertainty about the claims he intends to make. Paragraph 4 is titled "Disparate Treatment: Race discrimination under Section 1981." His allegations thereunder are clear. The title of paragraph 5 creates confusion. It says – "Race and Age Discrimination." Although it might appear that Winborn is alleging a form of "intersectional" discrimination, the court is unsure how to construe his

claims under Title VII[3] (retaliation), the ADEA,[4] and 42 U.S.C. § 1981 ("§ 1981"). On June 15, 1998, Winborn filed a second amended complaint which added claims under 42 U.S.C. § 1983 ("§ 1983") and the Alabama Age Discrimination Act, Act 97-723 ("AADA"). He also named three additional defendants: 1) Commissioner Joe Hopper, in his official capacity only, 2) Warden Glenn Newton, in both official and individual capacities, and 3) Warden Billy Mitchem, in both official and individual capacities. Winborn had not perfected service of process upon the individual defendants when the State of Alabama moved to dismiss the ADEA claims on the basis of Eleventh Amendment immunity. Therefore, at that time only the State was a

---

actual intent. The court believes that Winborn is alleging that defendants discriminated against older employees and black employees, not merely old, black employees. Construing Winborn's complaint in this fashion may work to his advantage, because proving intersectional discrimination is, as a practical matter, much more difficult than proving one form of discriminatory intent among alternatives. However, paragraph 5 proceeds to undercut whatever purely race-based claim Winborn intends. In two places, Winborn alleges that younger black officers were not disciplined in the same manner that he was disciplined, despite having committed similar violations of policy. Instead, Winborn indicates that younger black officers were held to the same standard and received the same disciplinary treatment as white officers. This suggests that defendants did not intend to discriminate against Winborn on the basis of race alone. If Winborn is deemed to concede his claim of pure race discrimination, only an intersectional claim remains viable. Because this court must give Winborn the benefit of the doubt, for purposes of summary judgment, this court will construe Winborn's complaint to state three alternative theories of defendants' motivations – age discrimination, race discrimination, or intersectional age-race discrimination.

[3] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

[4] Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

defendant.  On September 11, 1998, this court granted that motion and dismissed the action to the extent it made claims under the ADEA.  On February 23, 1998 the present motion for summary judgment was filed.

### Particular Matters of Procedural Confusion

Winborn seems to believe that he has a pending claim under Title VII.  This has <u>never</u> been the case.  Winborn's EEOC charges involved <u>age</u> discrimination under the ADEA and <u>retaliation</u> for having filed said <u>age</u> claim.  The notices of right to sue are clear: "You may sue under the ADEA."  Thus Winborn never was given a right to sue under Title VII, and he has no such claim now.  Furthermore, as stated above, this court dismissed the present action insofar as it stated claims under the ADEA.  *See Order*, September 11, 1998.

The State of Alabama and the individual defendants are no less confused.  In their jointly-filed motion for summary judgment, defendants argue that Winborn failed to file suit within the statutory limitations period.  They state: "The Plaintiff is required to file a Title VII action within (90) days of the receipt of the Right to Sue letter" from the EEOC. Not only does defendants' contention reveal that they, too, persist under the misimpression that a Title VII claim exists,

but it is based on the false premise that this action commenced with the filing of the first amended complaint on April 2, 1998. In actuality, the action began far sooner with Winborn's first filing on December 8, 1997, later deemed a complaint by Judge Propst's December 12, 1998 order. Winborn did receive notices of a right to sue under the ADEA, so the 90-day statute of limitations is applicable. However, because Winborn is deemed to have filed his action within that period, defendants' argument is without merit.

Defendants apparently are confused in another regard. Nowhere in their pleadings or briefs do they explicitly discuss Winborn's claims under § 1981. Apparently they assume that Winborn may only bring a race discrimination claim under the procedural rigors of Title VII, but they are mistaken. It is true that neither of Winborn's EEOC charges alleges <u>race</u> discrimination, but this truth only leads to the conclusion that Winborn may not now depend upon Title VII as a remedy. Instead, Winborn must rely upon § 1981 for a claim of race discrimination. Because defendants have entered a general denial of all factual allegations and legal claims, this court will not deem them to have waived any defenses to the § 1981 claim. However, their failure to present arguments and evidence directly related to § 1981 necessarily impacts this court's consideration of their motion for summary judgment.

To summarize these clarifications, the court acknowledges that Winborn filed the present action on December 8, 1997, within the statutory limitations period required by the ADEA. Winborn made claims under Title VII, the ADEA, § 1981, § 1983, and the AADA. However, as discussed above, no Title VII claim has ever existed. Stated differently, to the extent Winborn attempts to put forward a Title VII claim now, that claim is due to be dismissed, because no EEOC charge was made involving that statute. Because this court has previously dismissed Winborn's ADEA claims, including both his charge of age discrimination and his charge of retaliation, the pending motion for summary judgment must only address claims under § 1981, § 1983, and the AADA.

### Eleventh Amendment Immunity

In federal court the Eleventh Amendment bars claims under § 1981 and § 1983 against the State of Alabama. The Eleventh Circuit summarized this principle of immunity in *Cross v. State of Alabama*, 49 F.3d 1490 (1995) ("Cross"), where it stated:

> The Eleventh amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity.

*Id.*, at 1502, quoting *Lassiter v. Alabama A & M University*, 3 F.3d 1482, 1485 (11th Cir. 1983) ("Lassiter").

To the extent that Winborn makes claims for money damages under § 1981 and/or § 1983, his action is due to be dismissed against the State of Alabama (including the State by the names of Dept. of Corrections and East Thomas Work Release) and against the individual defendants sued in their capacities as state officials. However, to the extent that Winborn seeks prospective injunctive relief against Hopper, Newton, and Mitchem in their official capacities, such claims are not treated as an action against the State and are not subject to Eleventh Amendment immunity. *Lassiter,* at 1485. This rule is set out in *Moore's Federal Practice,* § 123.10[7][a], which explains:

> Federal courts treat litigation to enjoin future violation of federal law as an individual-capacity suit, even if the suit purports to be an official-capacity suit and the litigants complain of conduct implementing state policy. In such a suit, since the state cannot confer authority to violate federal law, the officer is stripped of state authority. Thus, the suit effectively is against the officer in an individual capacity, rather than as a state representative. Therefore, state sovereign immunity does not protect against such suits for prospective injunctive relief. § 123.10[7][a] See *Ex parte Young,* 209 U.S. 123, 159-60 (1908).

*Id.*

The limited exception to Eleventh Amendment immunity applies only to prospective injunctive relief. The three individual officials, in their official capacities, are shielded against an action for damages, just as the State itself is. Thus, Winborn's damages claims under § 1981 and § 1983 may

proceed against Newton and Mitchem in their individual capacities only, subject to any other defenses they may have. They have, of course, pled qualified immunity, which will be discussed, *infra*.

Defendants argue that the Eleventh Amendment and/or sovereign immunity provides immunity against claims under the AADA. In order for the State of Alabama to waive its sovereign immunity against suit under the AADA, it would need to specify that intent by express language within the AADA itself. *See, e.g., Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-06 (1990). However, it is unlikely that the Alabama legislature could or would attempt to waive immunity. Recent commentators point out:

> Article I, § 14 of the Alabama Constitution of 1901 states that "the State of Alabama shall never be made a defendant in any court of law or equity." Section 14 "wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state." Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372, 376, 175 So. 383, 386 (1937). Thus, the legislature's failure to expressly exclude state employees from coverage under the [AADA] will not provide a reason to penetrate the "almost invincible 'wall' of the state's immunity, as established by the people through their Constitution." Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971).

John W. Sheffield & Brian R. Bostick, *A Practitioner's Guide to the Alabama Age Discrimination Act of 1997*, 59 Ala. Law. 108, 111 (1998).

The court finds that there is no evidence to suggest that the State of Alabama has waived the immunity as against AADA liability that it enjoys as against other claims. Accordingly,

Winborn's AADA claims against the State of Alabama are barred by the state's sovereign immunity and by the Eleventh Amendment in a federal court.

Additionally, whereas federal courts may exercise jurisdiction over official-capacity claims for prospective injunctive relief against state officials who allegedly violate *federal* law, no such exception to Eleventh Amendment immunity exists where the claim is based upon state law. *See Pennhurst State Sch. and Hosp. V. Alderman*, 465 U.S. 89, 106 (1984). Therefore, Winborn's claims under the AADA for prospective injunctive relief against Hopper, in his official capacity, are also barred by the Eleventh Amendment.

Claims against Hopper fail for the further reason that the AADA, like the ADEA, provides no remedy against any entity except <u>the employer</u>. Because none of the individual defendants qualify as an employer under the AADA, that statute availeth plaintiff nothing as against them. *See Cross*, at 1504 (holding that individuals cannot be held liable under the federal ADEA). Therefore, all claims under the AADA, against both the institutional and the individual defendants, are due to be dismissed.

Having thus considered the application of the State's immunities, most of Winborn's claims are due to be dismissed.

To the extent that Winborn makes claims for injunctive relief under § 1981 and/or § 1983 against Hopper, Newton, and Mitchem, each in his official capacity, the action will proceed. So, too, Winborn's claims for damages under § 1981 and/or § 1983 against Newton and Mitchem, individually, survive, subject to the possible application of qualified immunity, discussed below.

### Qualified Immunity

Insofar as state officials are sued in their individual capacities, the application of the doctrine of qualified immunity needs to be considered. Qualified immunity shields officials from § 1981 and § 1983 liability for actions, taken within their discretionary authority, which do not violate principles of federal law clearly established at the time committed. Mitchem and Newton interpose qualified immunity as a defense to the § 1981 and § 1983 claims, but the court finds that the circumstances do not permit such a defense. A reasonable jury could infer from Winborn's evidence that Winborn was subjected to adverse employment actions on the basis of his age, his race, in retaliation for having filed an EEOC charge, of some combination of these motives. The court finds that such an act of discrimination in employment has long been clearly

established law.  Thus, Mitchem and Newton cannot rely upon qualified immunity as a defense.

## Consideration of the Merits
## Under § 1981 and § 1983

The shifting burdens of proof under § 1981 and § 1983 are alike.  Winborn must make out a *prima facie* case, creating a presumption of discrimination.  If defendants can rebut that presumption by presenting legitimate, non-discriminatory reasons for the alleged adverse employment actions in question, Winborn must then demonstrate that those reasons are merely pretext for actual discriminatory motives.  The court finds that Winborn has successfully overcome these burdens at the Rule 56 stage.

Winborn has successfully created a *prima facie* case of discrimination on the basis of race.[5]  As a state employee with some degree of experience, he appears qualified for his job.  He is also a member of a protected class, because he is black.  If his evidence is to be believed, Winborn has been subjected to a harsher disciplinary standard than other employees who are white.  Having presented such evidence, Winborn creates a presumption of discrimination.

---

[5] Arguably Winborn makes out a *prima facie* case of age-based discrimination, intersectional age-race discrimination, and/or retaliation for having filed an EEOC charge.  For the various reasons discussed, *supra*, only Winborn's claims of race-based discrimination survive.

Defendants have barely briefed the merits of Winborn's claims. Either they believe that their various immunity-based defenses suffice to earn summary judgment, or they have determined not to waste their energies on failing arguments. Whichever the case, the court gleans from the briefs that defendants wish to articulate as their legitimate reasons for their actions that Winborn's suspension and transfer resulted from his own failures to follow proper policy, because he did not "properly" report a minor accident involving a state-owned vehicle. It may be true that Winborn failed in this regard, but the court finds that a reasonable jury could determine, on the basis of Winborn's evidence at this stage, that this "fault" was not the true reason why Winborn suffered adverse employment actions. As previously stated, on the basis of what appears now, a reasonable jury could infer discriminatory motives on defendants' part, despite their proffered non-discriminatory reasons. Therefore, defendants' actual motives remain in dispute. Accordingly, summary judgment on the merits of Winborn's claims under § 1981 and § 1983 is inappropriate.

### Conclusion

For the foregoing reasons, the court determines that defendants' motion for summary judgment is due to be partially granted and partially denied. A separate and appropriate order shall be entered.

DONE this 8th day of June, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE